IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

RICHARD A. KING,                         )
                                         )
            Plaintiff,                   )      TC-MD 210327N
                                         )
      v.                                 )
                                         )
COLUMBIA COUNTY ASSESSOR,                )
                                         )
            Defendant.                   )      **DECISION**

Plaintiff appealed the assessment of property identified as Account 2970 (subject property) for the 2020-21 tax year. A trial was held remotely on April 19, 2022. Plaintiff appeared and testified on his own behalf. David Leader (Leader), Chief Appraiser, appeared on behalf of Defendant. Caron J. Melville (Melville), Certified Residential Appraiser, testified on behalf of Defendant. Plaintiff's Exhibits 1 to 7 were received without objection. Defendant's Exhibit A was received over Plaintiff's objection.[1] Following trial, Defendant filed a Statement for Costs and Disbursements seeking to recover $1,050 associated with its appraisal expert.

I. STATEMENT OF FACTS

The subject property is a 65 by 205-foot manufactured home situated on a 13,325-square-foot site with an outbuilding. (Def's Ex A at 3-4.) The home was built in 2015 and contains 859 square feet of living area. (*Id.* at 3.) The subject property is located on the Scappoose-Vernonia Highway, a "minor arterial." (Ptf's Ex 7 at 13.) Plaintiff testified that the highway speed limit is 45 miles per hour, but most cars drive faster than that. Log trucks start passing by at 4:30 a.m.

---

[1] Plaintiff objected to the exhibit because it contained "errors." For instance, Plaintiff disagreed with Melville's statement that she heard no traffic noise within the subject property. (Def's Ex A at 3.) Plaintiff's objection concerns differing perceptions, which the court must weigh upon hearing witness testimony. It is not a basis to exclude Defendant's appraisal report from evidence.

and traffic is heavy until 8:00 a.m., then again between 4:00 p.m. and 7:00 p.m. (*See also* Def's Ex A at 3 (describing the highway as "a busy feeder street with commercial property located across the street and residential properties immediately surrounding the subject").) Plaintiff testified that a scrap yard is located across the highway from the subject property and the abutting neighbor's yard is filled with rabbit hutches, dogs, and trash. (Ptf's Ex 7 at 3-4, 7-9.)

Plaintiff purchased the subject property for $110,000 in November 2014. (Ptf's Ex 5 at 3.) He testified that it was affordably priced and that appealed to him due to his fixed income. Since purchasing the subject in 2014, Plaintiff built a new home on the site. (*See id.*) He testified that the changes he made to the subject property qualify as "minor construction" and should not have resulted in a tax increase. For the 2020-21 tax year, the subject property's tax roll real market value was $250,160 and its maximum assessed value was $220,030. (Ptf's Ex 1.) Plaintiff requests that the real market value of the entire property be reduced to $160,000 and the maximum assessed value be reduced to $98,400, noting his taxes have become unreasonable. Defendant requests that the real market value be increased to $314,500.[2]

A.      *Plaintiff's Value Evidence*

Plaintiff challenges the subject property's land value, which was $171,460 for the 2020-21 tax year. (Ptf's Ex 1.) He submitted a list of land sales from 2019 and 2020 that he received from Defendant, with his own descriptions and comments. (Ptf's Ex 2 at 1.) Plaintiff testified that a property on Maple Street was the most similar to the subject property; it sold as an 11,325-square-foot bare lot for $64,500 on May 13, 2020, but now has a manufactured structure on it.

---

[2] Although Plaintiff appealed only the land value of the subject property, Defendant placed the entire real market value at issue pursuant to ORS 305.287. (*See* Ans, Dec 20, 2021.)

(*Id.* at 1-4.) Plaintiff testified that the lot had gas and sewer at the time of sale.[3] The property at the rear of the Maple Street lot has an easement to use the driveway. Leader noted that the Maple Street lot is 54 feet wide with a 20-foot easement, so its effectively only 34 feet wide for purposes of building. Plaintiff responded that the subject property is also narrow (50 feet wide) with a driveway. He testified that many of the other land sales on the list were mountain view lots in the West Hills, which are not comparable to the subject despite being only 0.25 miles away. (*See id.* at 1; Ptf's Ex 7 at 14.) Plaintiff testified that the $125,000 price for several of the mountain view lots supports his claim that the subject is overvalued. (Ptf's Ex 4 at 1.)

Plaintiff also provided a list of improved sales from 2019 to 2021 that averaged $105.60 per square foot, indicating a real market value of $160,000 for the subject property. (Ptf's Ex 3 at 1.) He received the list from an attorney to support his requested real market value. (*See id.*) Leader disagreed that any of the sales listed are truly comparable to the subject property: sale 1 was in a manufactured home park; sale 2 was by quitclaim deed after foreclosure and auction; sale 3 was not a true sale, but rather some kind of transfer back and forth between the buyer and seller; sale 4 was a "bank-owned fixer"; and sale 5 was between relatives.[4] (*See also id.* at 2-11.)

Plaintiff testified that he compared the maximum assessed value with the real market value of sales in the subject's area from 2019 and 2020, finding the average ratio was 0.56. (*See* Ptf's Ex 4 at 2.) The subject property's ratio is 0.79, so he requests a reduction in maximum assessed value consistent with the ratio of those other properties. (*See id.*)

---

[3] The listing states "city improvements needed to build. 29 foot wide house will fit according to city but buyer will need to verify." (Ptf's Ex 2 at 4.)

[4] Sale 1 is a manufactured structure located in Green Meadows Park. (Ptf's Ex 3 at 3.) The assessment includes improvements only, no land. (*Id.* at 2.) Sale 2 was foreclosed in 2019 and described as being in "fair condition" at that time. (*Id.* at 5.) Repair work had begun in 2020 and was described as a "complete reno" underway in 2021. (*Id.*) Defendant's notes from 2020 indicate sale 4 had a new roof and windows, as well as a permit for additional work indicating the home was "a rental with 'upgrades' to interior." (*Id.* at 9.)

B.     *Defendant's Value Evidence*

Melville appraised the subject property as of January 1, 2020. (Def's Ex A at 1.) She testified that the subject property is typical for the area. The subject suffers from no adverse conditions that impact its marketability. (*See id.* at 4.) Melville performed the sales comparison and cost approaches to determine the subject property's real market value, ultimately placing "[a]ll weight" of her appraisal on the sales comparison approach with some support from the cost approach. (*Id.* at 4-5, 9.)

1.     *Sales comparison approach*

Melville identified four comparable sales from 2019: two located within a mile of the subject property in Scappoose and two located over eight miles away in St. Helens. (Def's Ex A at 4-5.) She testified that she selected sale 2 because it had a larger site size and outbuilding like the subject, and she selected sale 4 because it had a "rehabbed" home similar to the subject in condition. The properties sold for prices ranging from $179,000 to $317,500. (*Id.*) Melville adjusted for a variety of factors and concluded an indicated real market value of $314,500 for the subject property. (*Id.* at 4.)

Plaintiff questioned why Melville did not consider the 2014 sale of the subject property as part of her analysis. She testified in response that she typically only considers about three years of sales history, beyond which the market has changed too much. Plaintiff questioned whether Melville adequately accounted for the subject property's location on a busy highway and the related traffic noise. Melville wrote that, "[w]hile inside the subject's dwelling, there was no evidence of background traffic noise. The subject's dwelling sits at the back half of the property[,] which further limits noise and provides additional privacy." (Def's Ex A at 3.) Plaintiff noted that Melville visited the subject at 1:00 p.m., which is not a high-traffic time. She

testified in response that semi-trucks run at all hours and reiterated her opinion that the set-back location of the home and its insulation dampened traffic noise. Melville testified that her comparable sale 1 has similar traffic influences as the subject and is located across from a sand and gravel company, similar to the scrap yard across from the subject. (*See* Def's Ex A at 4.) She testified that sale 3 was also on a "somewhat busy" road. (*See id.*)

2.      *Cost approach*

Melville also performed a cost approach using land sales, Marshall and Swift building cost estimates, and her "knowledge of local building costs." (Def's Ex A at 4.) She identified four land sales (three in 2018 and one in 2020) for prices ranging from $87,000 to $125,500, two of which evidently had tear-down homes.[5] (*Id.*) Melville concluded a land value of $140,000 for the subject property. (*Id.*) To that, she added the depreciated cost of improvements ($150,386) and the as-is value of site improvements ($25,000) for a rounded total value of $315,400. (*Id.*)

## II. ANALYSIS

The issues before the court are the 2020-21 real market value and maximum assessed value of the subject property.

As the party seeking affirmative relief, Plaintiff bears the burden of proving his claim by a preponderance of the evidence. ORS 305.427.[6] Preponderance of the evidence means "the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971). Evidence that is inconclusive or unpersuasive is insufficient to sustain the burden of proof. *Reed v. Dept. of Rev.*, 310 Or 260, 265, 798 P2d 235 (1990). "[I]t is not

---

[5] Melville's first land sale had a house that was "demolished after purchase." (Def's Ex A at 4.) Her third land sale had a "major fixer" that, presumably, did not contribute to the land value. (*See id.*)

[6] The court's references to the Oregon Revised Statutes (ORS) are to 2019.

enough for a taxpayer to criticize a county's position. Taxpayers must provide competent evidence of the [real market value] of their property." *Poddar v. Dept. of Rev.*, 18 OTR 324, 332 (2005). "Competent evidence includes appraisal reports and sales adjusted for time, location, size, quality and other distinguishing differences, and testimony from licensed professionals such as appraisers, real estate agents and licensed brokers." *Danielson v. Multnomah County Assessor,* TC–MD 110300D, 2012 WL 879285 (Or Tax M Div Mar 13, 2012). Defendant bears the burden of proof with respect to its request to increase the subject property's real market value. "[T]he court has jurisdiction to determine the real market value or correct valuation on the basis of the evidence before the court, without regard to the values pleaded by the parties." ORS 305.412.

A.      *Real Market Value*

Real market value is defined as "the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year." ORS 308.205(1). The assessment date for the 2020-21 tax year was January 1, 2020. *See* ORS 308.007; 308.210. Real market value must "be determined by methods and procedures in accordance with rules adopted by the Department of Revenue." ORS 308.205(2). To determine real market value, the department requires consideration of three approaches to value: the cost approach; the sales comparison approach; and the income approach. OAR 150-308-0240(2)(a). Even though all three approaches must be considered, all three may not be applicable to the valuation of the subject property. *Id.* The applicable approach to value is a question of fact determined on the evidence presented. *Pacific Power & Light Co. v. Dept. of Rev.*, 286 Or 529, 533, 596 P2d 912 (1979).

Plaintiff requests a reduction in the subject property's land value. In support of that request, he offered several unadjusted land sales. Plaintiff's best comparable sale is the Maple Street property, encumbered by an easement for a rear neighbor to use the driveway, a difference that should be addressed through a market-based adjustment.[7] Most of Plaintiff's additional comparable sales are superior properties meant to bracket the subject below their higher values, though Plaintiff provided relatively little information about them and made no adjustments.[8] *See* OAR 150-308-0240(2)(c) (sales must be "verified to ensure they reflect arms-length market transactions" and must be "comparable to the subject, or adjusted to be comparable"). Plaintiff's evidence does not meet the burden of proof.

Plaintiff also offered some evidence of the subject property's total real market value, specifically his 2014 purchase price and a list of comparable sales from an attorney. "[A] recent, voluntary, arm's length transaction between a buyer and seller, both of whom are knowledgeable and willing, * * * while certainly not conclusive, is very persuasive of the market value." *Kem v. Dept. of Rev.*, 267 Or 111, 114, 514 P2d 1335 (1973). The 2014 sale of the subject is not recent as of the January 1, 2020, assessment date. Moreover, Plaintiff has made significant changes to the subject since his purchase, notably adding a new manufactured structure in 2015. The list of sales from the attorney were not adjusted for differences from the subject despite atypical market conditions, significant work performed following sale, and the lack of land component in the first sale. For those reasons, Plaintiff's evidence does not support a real market value reduction.

Melville concluded that the subject property's real market value was $314,500 based on

---

[7] *Cf Macy's Dept Stores, Inc. v. Lane County Assessor,* TC-MD 180097R, 2020 WL 406826 at *9 (Or Tax M Div Jan 24, 2020) ("To properly analyze * * * property value, one must use properties subject to similar restrictions[, like easements,] or make adjustments to address those issues.").

[8] For instance, Plaintiff's exhibit does not list the site size of any lots, nor does it explain why two lots have two different sale dates or why two lots include a sale date but no price. (Ptf's Ex 2 at 1.)

the sales comparison approach, with support from the cost approach. Her analysis conformed to approved appraisal techniques and supported her conclusion. Plaintiff challenged whether Melville adequately captured the impact of the subject property's location on a busy road, to which Melville noted that the location of her first comparable sale was similar. Plaintiff offered no evidence to rebut Melville's value conclusion and the court finds that the subject property's 2020-21 real market value was $314,500.

Plaintiff expressed outrage that Defendant may seek a higher real market value than the tax roll. A county assessor may not appeal from a board of property tax appeals order sustaining the tax roll value because the assessor is not aggrieved and lacks standing to appeal the board order. *See* ORS 305.275(4) (permitting appeal by "[a] county assessor who is *aggrieved* by an order of the county board of tax appeals" (emphasis added)); *see also Bear Creek Plaza v. Dept. of Rev.*, 12 OTR 272, 274 (1992) (holding that an assessor may appeal from a board order only if it changed the value set by the assessor; otherwise, the assessor would be appealing its own determination). However, once the question of real market value is placed before the court in a *de novo* hearing, it must determine the correct real market value. *See* ORS 305.425 (stating tax court proceedings are *de novo*); *see also* ORS 305.412 (quoted above). In the court's *de novo* proceeding, the county assessor may present evidence of a real market value greater than the tax roll. *Clark v. Dept. of Rev.*, 14 OTR 221, 223-224 (1997). The tax roll real market value is

> "typically based on mass appraisal techniques. As a property tax appeal proceeds, the property is given more individual attention and, consequently, the determination of value becomes more refined. Because the goal of contested proceedings is to determine the real market value of property, an assessor must be allowed to present evidence of that value."

*Id*. at 226. Although the court has found evidence to increase the real market value, it is unclear whether the finding will have any impact on Plaintiff's tax burden because the subject property's

assessed value was and is based upon the maximum assessed value of $220,030. *See* ORS 308.146(2) (stating assessed value is lesser of real market and maximum assessed value).

B. *Maximum Assessed Value*

Plaintiff requests a reduction in the subject property's maximum assessed value based on the ratios of maximum assessed value to real market value of other properties in the area. This court fully addressed and rejected Plaintiff's similar claim in a prior tax year appeal. *King v. Columbia County Assessor*, TC-MD 190107G, 2020 WL 5554534 (Or Tax M Div Sept 16, 2020); *see also Moore v. Jackson County Assessor*, TC-MD 210339N, 2022 WL 2045739 (Or Deny Ptf's Mot for Summ J, June 7, 2022) (rejecting Plaintiff's equal protection challenge to maximum assessed value based on a ratio analysis of similar properties in the same neighborhood).

Plaintiff also challenged the subject property's maximum assessed value alleging that it should not have been increased for new construction because that new construction qualified as minor improvements. *See* ORS 308.149(5) (defining minor construction); 308.149(6)(b)(B) (excluding minor construction from the definition of "new property or new improvements"). Plaintiff did not allege or offer evidence that the subject property's 2020-21 maximum assessed value increased by more than three percent for new improvements or any other reason. Thus, Plaintiff's claim relating to minor construction has no relevance to the 2020-21 tax year, which is the only tax year under appeal. Plaintiff's request to reduce maximum assessed value is denied.[9]

/ / /

---

[9] Plaintiff expressed concern about his ability to pay property taxes and the court noted that Oregon provides a homestead property tax deferral for qualifying individuals based on age or disability. *See* ORS 311.666 to 311.701. The court expresses no opinion whether Plaintiff and the subject property might qualify but mentioned the program as a possible avenue for Plaintiff to seek property tax relief.

C.      *Costs and Disbursements.*

Defendant filed a statement for costs and disbursements, seeking to recover expenses incurred in connection with hiring a fee appraiser to prepare an appraisal report and testify at trial. "Fees of experts such as appraisers are not allowable as costs and disbursements in the Magistrate Division." *Harder v. Deschutes County Assessor*, TC-MD 200126G, 2022 WL 714976 at *2 (Or Tax M Div Mar 10, 2022); *see also* ORS 305.490(4)(a)(B) (allowing tax court judge to award expert witness fees to a prevailing taxpayer "in addition to costs and disbursements"). Defendant's request for costs and disbursements is denied.

### III.  CONCLUSION

Upon careful consideration, the court concludes that the subject property's 2020-21 real market value was $314,500. Plaintiff's request to reduce the subject property's maximum assessed value is denied because Plaintiff has identified no legal authority supporting the request. Defendant's request for costs and disbursements is also denied because expert witness fees are not recoverable as costs and disbursements. Now, therefore,

IT IS THE DECISION OF THIS COURT that the 2020-21 real market value of property identified as Account 2970 was $314,500. Plaintiff's appeal is denied.

IT IS FURTHER DECIDED that Defendant's request for costs and disbursements is denied.

Dated this _____ day of June 2022.

_____
ALLISON R. BOOMER
PRESIDING MAGISTRATE

***If you want to appeal this Decision, file a complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.***

*Your complaint must be submitted within __60__ days after the date of this Decision or this Decision cannot be changed.  TCR-MD 19 B.*

*This document was signed by Presiding Magistrate Allison R. Boomer and entered on June 30, 2022.*